## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Jacob Daniel Rheault, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:12-cv-21 |
| vs. | ) | |
| | ) | |
| City of Fargo, North Dakota, Fargo Police | ) | **REPORT AND RECOMMENDATION** |
| Department, North Dakota, Officer Sarah | ) | |
| Cruze, Individually, and Officer Chris | ) | |
| Helmick, Individually, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Jacob Daniel Rheault ("Rheault") filed a *pro se* complaint on March 21, 2012, pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1367. (Doc. #7). The defendants filed a motion for summary judgment (Doc. #36) and a motion for a hearing (Doc. #40). The motion for summary judgment has been fully briefed by the parties.

### Summary of Recommendation

Defendants are entitled to judgment as a matter of law. Rheault has either failed to state a claim upon which relief can be granted or the defendants are entitled to qualified immunity. It is **RECOMMENDED** that the defendants' motion for summary judgment be **GRANTED** and the complaint be **DISMISSED** with prejudice. It is further **RECOMMENDED** that the defendants' motion for a hearing be **DENIED**.

### Facts

On January 25, 2010, at approximately 1:30 p.m., Rheault ran his Jeep into the back of a police vehicle occupied by Officer Grant Benjamin. (Motor Vehicle Crash Worksheet, Doc. #38-1, pp. 65-68 and Doc. #47-5). Officer Benjamin had stopped his squad vehicle on the road

to protect another vehicle that was stuck in a snow drift.  Id.  The accident occurred during a blizzard with white-out conditions.  Id.

According to defendant Officer Christopher Helmick's narrative in the Motor Vehicle Crash Worksheet, after the accident witness Zack Strand, who had been in the stranded vehicle, checked on Officer Benjamin and Rheault to see if they were alright.  Id.  Officer Benjamin complained of back and neck injuries and was transferred to the hospital by an ambulance.  Id.  Rheault stated he was okay, got out of his Jeep, and was about to walk into traffic when Strand told him to get back into his vehicle.  Id.  According to a Fargo Police Department Report created by Officer Helmick, witness Jacob Johnson, who had been shoveling snow in an attempt to free the stranded vehicle, stated that he spoke with Rheault after the accident and Rheault said he was fine.  (Fargo Police Department Report Summary, Doc. #38-1, p. 69).  Johnson said he did not notice anything unusual about Rheault, except that Rheault did not appear to know what had happened.  Id.

Rheault stated in his deposition that he believes he hit his head on the air bag that deployed as a result of the accident and was briefly knocked unconscious.  (Rheault Depo., Doc. #38-1, pp. 14-16, 33).  Additionally, Rheault stated that when he "came to" he told witness Strand he was okay, got out of his Jeep and realized he had hit a police vehicle; he cursed, grabbed the headlight from his vehicle that was lying on the roadway, and got back into his Jeep.  Id. at pp. 14-15, 19.  Rheault only recalls speaking to one witness after the accident, which he believed was Zack Strand, but he stated it could have been Jacob Johnson.  Id. at p. 19.  Rheault admitted during his deposition that he did not ask for medical attention at the scene of the accident because he did not realize he was injured due to hitting his head.  Id. at pp. 17-18.

The defendants submitted two videos from defendant Officer Sarah Cruze's squad car. The first video begins with Sarah Cruze driving to the scene of the accident. (FARGO-PD#79_292_1A_012510_143307_001.mjpg. ("Video One") at frame # 1550-7060). During that time Officer Benjamin can be heard over the police radio stating that he hit his head on the steering wheel and the back of the cage of his squad vehicle, and that the individuals who were shoveling out the stranded car were not injured. Id. at frame # 4195-4620. He reported that Rheault was "out and about" and did "not appear injured." Id.

After arriving at the accident scene Officer Cruze approached the passenger side of Rheault's vehicle, opened the door, and briefly interacted with Rheault. Id. at frame # 19260-20305. Rheault contends that Officer Sarah Cruze approached the passenger side of his vehicle and said, "Off your cell phone. Back to my squad car now." (Rheault Depo., Doc. #38-1, pp. 14-15). The video depicts that Officer Cruze shut the passenger door of Rheault's vehicle and turned and spoke with emergency personnel who had arrived at the scene. (Video One at frame # 20305-21360). Officer Cruze pointed at Rheault's Jeep and then pointed at Officer Benjamin's squad vehicle. Id. Rheault was getting out of his vehicle at the time. Id. The emergency personnel walked past Rheault and his vehicle and went to assist Officer Benjamin. Id. Officer Cruze walked with Rheault to her squad car and she placed Rheault in the back seat. Id.

After being placed in the back seat Rheault made various comments, asked if anyone was injured, and responded to Officer Cruze's question about how fast he was driving.[1] Id. at frame # 21360-24000. Rheault stated he was driving 25 to 30 miles per hour. Id. at frame # 22600-

---

[1] Rheault and Officer Cruze can not be seen on the video, which depicts what was going on outside at the accident scene, but their conversations can be heard.

22830.  Officer Cruze asked Rheault if he had his drivers license and Rheault stated it was in his Jeep.  Id. at frame # 24180-25200.  Officer Cruze asked Rheault if he had been drinking, and Rheault responded that he drank the previous evening, with his last drink being at 2:00 a.m.  Id. at frame # 25200-25500.  Officer Cruze commented that Rheault smelled like alcohol, and Rheault agreed.  Id. at frame # 25500-25600.   Rheault consented to taking a breathalyzer test.  Id. at frame # 27700-28170.  Officer Cruze gave directions for the test and Rheault made comments about being confident he was not over the legal limit.  Id. at frame # 29200-30600.  Rheault asked if he seemed drunk and without waiting for a reply, he stated it was not Officer Cruze's "call to make" and she was just doing her job, as Rheault admittedly smelled like alcohol.  Id. at frame # 33200-33675.  Rheault took the breathalyzer test.  Id. at frame # 33675-33980.  He inquired as to the outcome, and Officer Cruze advised him that the breathalyzer was not working.  Id. at frame # 35676-37300.

After Rheault took the breathylyzer test, Officer Helmick can be heard asking Officer Cruze if Rheault was the driver and whether he was okay.  Id. at frame # 42100-42310.  Officer Cruze responded that Rheault said he was fine and was not hurt.  Id.  Rheault contends  that Officer Cruze never asked him if was injured and Rheault never told Officer Cruze that he was okay. (Complaint, Doc. #7, p. 9).

Shortly thereafter, Officer Helmick returned to Officer Cruze's squad car and asked Rheault if his insurance information was in his vehicle.  (Video One at frame # 45400-46175).  Rheault responded that it was in the glove box.  Id.  Officer Helmick asked Rheault if it was alright if he went "in there to get it," and Rheault said, "Yeah, go ahead."  Id.  Officer Helmick went to the vehicle, opened the front passenger side door of Rheault's Jeep, and looked in the

vehicle for approximately two minutes before retrieving the insurance information.  Id. at frame # 46175-50380.  During that time, Rheault took the nystagmus, or "eye test."  Id.

Officer Helmick returned to Officer Cruze's squad car and Officer Cruze asked Officer Helmick for his breathylyzer test unit, an SD5.  Id. at frames 50380-51050.  Officer Helmick stated that he would bring the SD5 to Officer Cruze.  Id.  While waiting for Officer Helmick to return with the SD5, Rheault explained a previous arrest he had for disorderly conduct.  Id. at frames  51400-5240.  Also, tow trucks arrived on the scene and Rheault requested that his vehicle be towed to his home; Officer Cruze made the request for Rheault.  Id. at frame # 54500-56180.  Thereafter, Rheault consented to taking the second breathalyzer and Officer Cruze informed Rheault of his Miranda rights.  Id. at frame # 56500-57400 and 57500-58400.  Rheault took the second breathalyzer test.  Id. at frame # 61700-62350.  He inquired as to the result of the test.  Id. at frame # 64200-64600.  While waiting for the breathalyzer to "clear out," Rheault called his father on his cell phone.  Id. at frame # 68900-73300.  Rheault informed his father that his car was going to be towed to their house, that he drank the previous evening, that he was given a breathalyzer and was awaiting the result, and that if he blew under the legal limit he would get to leave with the tow truck driver, but if not, he would be taken to the police station for a blood test.  Id.

Apparently, the second breathalyzer did not work either.  Officer Cruze decided to take Rheault to Hornbacher's grocery store for additional testing.  Id. at frame # 76400-77600.  While waiting for the breathalyzer test result and prior to driving to Hornbacher's grocery store, Rheault had several conversations with Officer Cruze.  Id. at frame # 62350-89231.  Video One ends with Officer Cruze and Rheault arriving at Hornbacher's grocery store.

During Rheault's deposition he stated that he was taken into the stockroom at Hornbacher's grocery store by Officers Helmick and Cruze to perform field sobriety tests. (Rheault Depo., Doc. #38-1, p. 18). Officer Cruze's field notes state that Rheault had bloodshot eyes, slurred speech, and he smelled of alcoholic beverages. (DUI Investigation Field Notes, Doc. #47-11, pp. 2-3). Rheault failed the field sobriety tests. Id,

On the second video the camera is focused on the back seat of Officer Cruze's squad car so Rheault can be seen on the video. (FARGO-PD#79_292_2A_012510_153959_001.mjpg. ("Video Two")). In the beginning of the video Rheault was being transported to Innovis Hospital for a blood test. Id. Rheault stated to Officer Cruze, "I am sure you are mad at me," and Officer Cruze responded that she was not, and if she got mad at everyone she arrested she would be "mad all the time." Id. at frame # 500-885. Rheault and Officer Cruze discussed the accident. Id. at frame # 885-3500. Rheault inquired about what would happen if the blood test revealed he was under the legal limit, and Officer Cruze stated she did not know and advised Rheault that he would have to talk to the city prosecutor. Id. at frame # 3900-4400.

When Officer Cruze arrived at Innovis Hospital, Rheault maneuvered his coat off while handcuffed in the back seat of the patrol car. Id. at frame # 11600-12700. He slid himself across the back seat and got out of the vehicle on the opposite side of where he was sitting. Id. at frame # 12700-13555. After the blood test, Rheault got back into the squad car while still handcuffed. Id. at frame # 47800-48400. Rheault and Officer Cruze conversed regarding various topics until they arrived at the jail. Id. at frame # 50300-76118. During Rheault's deposition, he admitted he never asked for medical treatment while at Innovis Hospital or while being booked into the jail. (Rheault Depo., Doc. #38-1, pp. 18-19).

The day after the accident, Rheault began feeling sore in his neck and back. <u>Id.</u> at pp. 32-33. Rheault stated he vomited two days after the accident. <u>Id.</u> Three days after the accident Rheault went to the walk-in clinic at Sanford Medical Center. <u>Id.</u> at p. 33. Rheault complained of headaches, neck discomfort, intermittent dizziness and some vomiting. (Medical Records, Doc. #47-8, p. 15-16). He underwent a CT scan of his brain and spine. <u>Id.</u> at pp. 8, 11, 13-16. The results came back normal. <u>Id.</u> The doctor advised Rheault to rest, drink fluids, take Pepcid AC for indigestion, and use Tylenol or ibuprofen along with heat for the neck discomfort, and the doctor offered to set up physical therapy. <u>Id.</u> at p. 16. Rheault saw a chiropractor on several occasions from February until April of 2010. <u>Id.</u> at pp. 17-30. In July of 2010, Rheault returned to Sanford Medical Center and had another CT scan of his spine, which also was normal. <u>Id.</u> at pp. 4-7, 9-10. In April of 2010, Rheault underwent some physical therapy. (Rheault Depo., Doc. #38-1, p. 33).

Rheault stated that the result of the blood test he took at Innovis Hospital came in weeks after his arrest. <u>Id.</u> at p. 24. Rheault's blood alcohol level was under the legal limit. After receiving this information the city prosecutor moved to dismiss the charge of driving under the influence because of insufficient evidence. (Motion to Dismiss, Doc. #7-3, p. 2 and Doc. #47-4). The city prosecutor filed an Information charging Rheault with reckless driving. (Information, Doc. #7-2). Rheault was found not guilty of reckless driving. On January 25, 2012, Rheault filed a claim for damages with the City of Fargo for his injuries and for violations of his civil rights. (Notice of Claim, Doc. #47-2). Rheault submitted to the court a recorded conversation he had with Fargo Police Department Internal Affairs regarding Rheault's complaints. (Doc. #47-13).

**Claims**

In Rheault's complaint he alleges eight claims entitle him to monetary damages. (Complaint, Doc. #7). In Count One Rheault contends that Officer Helmick violated Rheault's Fourth Amendment right by not limiting his search to the glove compartment of Rheault's Jeep when locating Rheault's insurance papers. <u>Id.</u> at pp. 15-16. In Count Two Rheault alleges the Fargo Police Department and Officer Cruze maliciously or unlawfully arrested him for driving under the influence and maliciously prosecuted him for reckless driving. <u>Id.</u> at pp. 17-18. In Count Three Rheault contends that the City of Fargo, the Fargo Police Department, Officer Cruze and Officer Helmick are liable for not requiring Rheault to sign a refusal of medical care form. <u>Id.</u> at pp. 18-20. In Count Four Rheault alleges the City of Fargo, the Fargo Police Department, Officer Cruze and Officer Helmick denied Rheault medical treatment. <u>Id.</u> at pp. 20-22. Count Five appears to be a variation of Count Four. In Count Five Rheault contends that Officers Helmick and Cruze deprived Rheault of his right to medical aid. <u>Id.</u> at pp. 22-23. In Count Six Rheault alleges that the defendants conspired to deny Rheault medical treatment, and Officer Helmick failed to intervene to provide medical assistance during Cruze's interrogation of Rheault. <u>Id.</u> at pp. 23-25. In Count Seven Rheault makes a claim for intentional infliction of emotional distress against the City of Fargo, the Fargo Police Department, Officer Cruze and Officer Helmick. <u>Id.</u> at pp. 25-26. Finally, in Count Eight Rheault alleges the City of Fargo and the Fargo Police Department were negligent in hiring, training, supervising and disciplining Officers Cruze and Helmick. <u>Id.</u> at pp. 26-28.

**Summary Judgment Standard**

Summary judgment is appropriate if there is not a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c); <u>Celotex Corp. v.</u>

Catrett, 477 U.S. 317, 322-23 (1986). Rule 56 of the Federal Rules of Civil Procedure

"mandates the entry of summary judgment . . . against a party failing to make a showing

sufficient to establish the existence of an element essential to that party's case." Celotex, 477

U.S. at 322. The burden is on the moving party to establish the basis for its motion. Donovan v.

Harrah's Md. Heights Corp., 289 F.3d 527, 529 (8th Cir. 2002). If the moving party has

supported its motion for summary judgment, the nonmoving party has an affirmative burden

placed on it to go beyond the pleadings and show a genuine triable issue of fact. Commercial

Union Ins. Co. v. Schmidt, 967 F.2d 270, 271 (8th Cir. 1992). The court views the facts in the

light most favorable to the nonmoving party, who enjoys "the benefit of all reasonable inferences

to be drawn from the facts." Vacca v. Viacom Broadcasting of Missouri, Inc., 875 F.2d 1337,

1339 (8th Cir. 1989) (citation omitted).

**Discussion**

As a preliminary matter, defendants assert that pursuant to section 32-12.1-03(3) of the

North Dakota Century Code the defendants are immune from liability for any claim of a

violation of the Fourth Amendment and for claims brought pursuant to 42 U.S.C. § 1983.

(Defendants' Memorandum, Doc. #37, pp. 12-13, 15). However, this court has noted that

section 32-12.1-03(3) "only provides immunity in [state law] tort cases." Shape v. Barnes Cnty.,

N.D., 396 F.Supp.2d 1067, 1075 (D.N.D. 2005). Section 32-12.1-03(3) of the North Dakota

Century Code does not provide immunity for claims grounded in the United States Constitution.

Id.

I.      **Illegal Search**

Rheault contends that Officer Helmick violated his Fourth Amendment right by not

limiting his search for the insurance document to the glove compartment.[2] (Complaint, Doc. #7, p. 16). Rheault alleged in his complaint that Helmick searched his "entire car" without a warrant under the pretext that Helmick was looking for the insurance document. Id. at p. 16. In Rheault's deposition he stated that Helmick "searched the center console, underneath the seats, [and] behind the driver's seat[]." (Rheault Depo., Doc. #38-1, p. 24). In Rheault's response to the defendants' motion for summary judgment he contends that Helmick can be seen, presumably on the video, searching the center console and behind the driver's and passenger's seats before opening the glove compartment. (Plaintiff's Response, Doc. #47, p. 6). Later in his response, Rheault states Officer Helmick searched the door pockets and center console before retrieving the information from the glove compartment. Id. p. 8. However, the court notes the video does not show where in the vehicle Officer Helmick searched. The video depicts that Officer Helmick opened only the front passenger side door and while he stood outside he searched inside the vehicle for approximately two minutes before he retrieved the insurance information. (Video One at frame # 46175-50380).

Officer Helmick contends he is entitled to qualified immunity. Qualified immunity shields government officials from liability unless their conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known. Henderson v. Munn, 439 F.3d 497, 501 (8th Cir. 2006) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Defendant contends that Rheault consented to the search. Rheault informed Officer Helmick that the insurance information was in the glove compartment and gave him permission to go into the vehicle to retrieve the information. Rheault arguably limited the scope of his

---

[2] Rheault's Fourth Amendment claim is for nominal damages, as nothing was found in the vehicle other than the insurance document.

consent to the glove compartment. However, a reasonable person would have believed that the scope was not so limited. There is no evidence as to where Officer Helmick found the insurance information other than Rheault's assertion in his response to the motion for summary judgment, and there is no evidence that Officer Helmick continued to search the vehicle after he found the insurance information. He took nothing from Rheault's vehicle except the insurance document. Officer Helmick is entitled to qualified immunity, as it was objectively reasonable for him to believe that searching areas other than the glove compartment for the insurance information was lawful.

## II. Unlawful Arrest and Malicious Prosecution

Defendants contend that Rheault's claims for unlawful arrest and malicious prosecution are grounded in state law and are barred by section 28-01-18(1) of the North Dakota Century Code. (Defendants' Memorandum, Doc. #37, pp. 16-17). According to the state statute, state law claims for false imprisonment must be commenced within two years of when the action accrues.[3] N. D. Cent. Code § 28-01-18(1) (1985). However, Rheault's claims are more appropriately characterized as brought pursuant to 42 U.S.C. § 1983. (See Complaint, Doc. #7, pp. 6, 18 ("This action is brought pursuant to 42 U.S.C. § 1983 . . ." and plaintiff seeks attorney fees and costs, although he is *pro se*, pursuant to 42 U.S.C. § 1988 for his claims in Count Two.)).

The Supreme Court has held that all § 1983 claims accruing within a particular state should be governed by that state's statute of limitations for personal injury claims. Wilson v.

---

[3] Defendants allege Rheault's claims for unlawful arrest and malicious prosecution are barred by the state statute of limitations, but in their analysis they ignore the claim for malicious prosecution and only focus on the claim for unlawful arrest. (Defendants' Memorandum, Doc. #37, pp. 16-17). Defendants construe Rheault's unlawful arrest claim as synonymous with a state law tort claim for false imprisonment. Id.

Garcia, 471 U.S. 261, 279-80 (1985), superseded on other grounds by statute, as recognized in Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 379-80 (2004). In states having multiple statutes of limitations, a § 1983 action is governed by the general or residual personal injury statute of limitations, rather than the various statutes of limitations for particular intentional torts. Owens v. Okure, 488 U.S. 235, 249-50 (1989). North Dakota's six-year statute of limitations codified in section 28-01-16(5) of the North Dakota Century Code applies to all § 1983 actions arising in North Dakota. Carpenter v. Williams County, N.D., 618 F.Supp 1293 (D.N.D. 1985). This action was commenced within the six-year period and is timely.

An arrest without a warrant is reasonable under the Fourth Amendment when it is supported by probable cause. Devenpeck v. Alford, 543 U.S. 146, 152 (2004). Probable cause exists when the facts and circumstances within an officer's knowledge are sufficient to warrant a person of reasonable caution to believe that an offense has been committed. Brinegar v. U.S., 338 U.S. 160, 175-76 (1949). Rheault admittedly drank the evening prior to the accident and smelled like alcohol, he failed the nystagmus, or "eye test," and he failed the other field sobriety tests performed at Hornbacher's grocery store. There was probable cause to arrest Rheault for driving under the influence of alcohol. Rheault's arrest was not unlawful or malicious.[4]

It is unclear whether malicious prosecution is a constitutional violation that would give rise to a § 1983 action, but if it is, it appears to arise under the Fourth Amendment. Harrington v. City of Council Bluffs, Iowa, 678 F.3d 676, 679-81 (8th Cir. 2012). "Sufficient probable cause would defeat . . . § 1983 claims based on malicious prosecution . . . ." Id. at 679. As noted

---

[4] In the event Rheault asserts his claim under state law for unlawful arrest and assuming the claim is not time barred, Rheault is not entitled to relief because his arrest was supported by probable cause.

above, there was probable cause for Rheault's arrest for driving under the influence of alcohol.

Accordingly, Rheault is not entitled to relief for the alleged "malicious" filing of the charge.

Once Rheault's blood test revealed that his blood alcohol level was under the legal limit, the city

prosecutor dismissed the driving under the influence charge and filed an Information charging

Rheault with reckless driving. Similarly, Rheault is not entitled to relief for his claim that he

was maliciously prosecuted for reckless driving because there was probable cause to support that

charge as well.[5] Rheault was driving fast enough during a blizzard that he was unable to stop

before running into a police vehicle.[6] Even if probable cause were lacking, the defendants are

entitled to qualified immunity, as it was objectively reasonable for them to believe there was

probable cause to support the charge.[7]

## III.    Refusal of Medical Care Form

The North Dakota Department of Health has developed a set of protocols for emergency

medical service professionals. One of the protocols quoted by Rheault directs ambulance service

personnel to have a patient sign a refusal form if the patient refuses medical care. See EMS

Protocol Instructions, 1.0.0 Refusal of Care at http://www.ndhealth.gov/ems/Protocol.htm.

---

[5] In the event Rheault asserts his claim under state law for malicious prosecution, Rheault is not entitled to relief because there was probable cause for the criminal proceeding. See Kummer v. City of Fargo, 516 N.W.2d 294, 298 (N.D. 1994).

[6] Under North Dakota law, reckless driving is defined as driving a vehicle "[r]ecklessly in disregard of the rights or safety of other," or "[w]ithout due caution and circumspection and at a speed or in a manner so as to endanger or likely endanger any person or the property of another." N.D. Cent. Code § 39-08-03 (1975).

[7] The court notes it was the city prosecutor who charged Rheault with reckless driving and not the named defendants. However, Rheault believes that Officer Cruze and the Fargo Police Department "pushed for [the] reckless driving" charge after the blood test came back as under the legal limit. (Rheault Depo., Doc. #38-1, p. 24).

However, there is no cause of action under federal or state law for failing to have a patient sign the form. Rheault has failed to state a claim upon which relief can be granted.

**IV.     Deprivation of Medical Care**

Rheault contends in Counts 4 and 5 that he is entitled to relief under 42 U.S.C. § 1983 for the defendants' failure to provide him with medical treatment after the accident. Rheault admittedly did not ask for medical care because he did not realize he was injured, but he contends Officer Cruze should have waited for the emergency medical service professionals to examine him before she ordered him to get into the back of her squad car. (Plaintiff's Response, Doc. #47, pp. 22-25). Rheault states that because his air bag deployed, it should have been obvious that he may have been injured. Id. Rheault believes that Officer Cruze ordered Rheault out of his vehicle to prevent the medical professionals from examining him. Id. Rheault states that Officer Cruze never asked him if he was injured, and she lied to Officer Helmick when she told him that Rheault said he was fine. Id.

Defendants contend that Officers Cruze and Helmick were not acting under color of state law, which is required to sustain an action under 42 U.S.C. § 1983. (Defendants' Memorandum, Doc. #37, pp. 21-23). Defendants, citing United States v. Classic, 313 U.S. 299, 326 (1941), state, "In order for the Court to find that Cruze and Helmick acted under color of state law, Cruze and Helmick's alleged actions must constitute the misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." Id. at p. 22. Defendants' interpretation of the United Stated Supreme Court holding in Classic is wrong.   Misuse of power is not a requirement to establish that an individual was acting under color of state law.  Rather, the United States Supreme Court made clear in Classic that even the "[m]isuse of power" possessed by virtue of state law is action taken "under color of

state law." 313 U.S. at 326. To infer that an officer only acts under color of state law when he or she misuses power is an illogical misstatement of the law. "[U]nder 'color' of law means under 'pretense' of law," and "[a]cts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it." Screws v. United States, 325 U.S. 91, 111 (1945). Officers Helmick and Cruze were performing their official duties when responding to the accident and were acting under color of state law.

Rheault contends he was in the custody of Officer Cruze once she ordered him to the back of her squad car, and at that point she was responsible for his medical needs. (Rheault Depo. Doc. #38-1, p. 21; Plaintiff's Response Doc. #47, pp. 22-23). Defendants do not appear to disagree with plaintiff that he was in custody because they cite Estelle v. Gamble, 429 U.S. 97, 106 (1976), as the governing law. The Supreme Court held in Estelle that convicted prisoners find protection in the Eighth Amendment against prison officials' "deliberate indifference" to their "serious medical needs" and safety. Id. Defendants fail to recognize that Rheault was not a convicted prisoner, but the standard they cite is nonetheless appropriate.

The court assumes Rheault was in custody after Officer Cruze ordered him to the back of her squad car, as both parties seem to agree.[8] The Eighth Circuit has suggested an arrestee's claim that law enforcement officers failed to provide medical assistance is properly analyzed

---

[8] The court disagrees that Rheault was placed in custody upon Officer Cruze's order. At that point, Officer Cruze was only investigating the accident. However, since Rheault was later arrested for driving under the influence his right to adequate medical assistance eventually came to fruition under the Fourteenth Amendment. Therefore, when he was placed in custody is irrelevant, as Rheault's medical needs did not change between the time when he was ordered out of the vehicle and when he was actually arrested.

under the Due Process Clause of the Fourteenth Amendment.[9]  See Carpenter v. Gage, 686 F.3d 644, 650 (8th Cir. 2012) (citations omitted).  The due process analysis of claims by arrestees and pretrial detainees "parallels that under the Eighth Amendment, because pretrial detainees are entitled to the same protection as imprisoned convicts."  Id.  An arrestee claiming denial of medical care is required to prove both an objective and subjective element.  Christian v. Wagner, 623 F.3d 608, 613 (8th Cir. 2010).   Rheault must show his medical needs were objectively serious.  Id.  This "requires evidence that the medical condition was diagnosed by a physician as requiring treatment, or was so obvious that a layperson would recognize the need for a physician's attention."  Id.  "Under the subjective prong, [Rheault] must show that the defendants were aware of the need but deliberately disregarded it."  Id,  A showing of negligence is insufficient.  Carpenter, 686 F.3d at 650, citing Farmer v. Brennan, 511 U.S. 825, 835 (1970) (Eighth Amendment claim).

_____

[9]  In Carpenter, the Eighth Circuit stated that because the plaintiff cited authorities applying the due process analysis, and did not invoke the Fourth Amendment, the Eighth Circuit would consider plaintiff's argument on that basis.  686 F.3d at 650.  The court cited a Seventh Circuit case, Ortiz v. City of Chicago, 656 F.3d 523, 530 (7th Cir.2011), in which the Seventh Circuit held that "the Fourth Amendment's reasonableness standard . . . rather than the deliberate indifference standard . . . applied to claims by pretrial detainees . . . [who] had not yet benefitted from a judicial determination of probable cause."  Rheault invoked the Fourth Amendment in his complaint as one of the bases of his claim, but he did not recite the reasonableness standard. (Complaint, Doc. #7, p. 23).  In his response to the defendants' motion for summary judgment, Rheault analyzed his claim under the deliberate indifference standard.  (Plaintiff's Response, Doc. #47, pp. 21-24).  If the reasonableness standard applies, Rheault's claim would fail, as the defendants' conduct was not objectively unreasonable because Rheault did not ask for medical assistance and the officers did not have notice that Rheault was injured.  Even though Rheault was in an accident and his air bag deployed, he did not appear injured.  Rheault answered all questions appropriately and his conversations with Officer Cruze and his father in Officer Cruze's presence demonstrated Rheault's ability to recall events and illustrated that Rheault knew what was happening, despite the alleged head injury.  Additionally, Rheault was able to walk to Officer Cruze's squad car without assistance, he was able to take his coat off while handcuffed in the back of the squad car, and he was able to get in and out of the squad car while handcuffed.  Therefore, it was reasonable for the officers to believe that Rheault was not injured.

Rheault's head, neck and back injuries were not so obvious that a layperson would have realized he was injured. Rheault was able to walk, he answered questions appropriately, he was able to communicate effectively, he was able to take his coat off in the back of the squad car while handcuffed, and he was able to get in and out of the back of the squad car while handcuffed. Additionally, there is no evidence that the defendants were aware of the injuries. Rheault himself did not realize he was injured and did not ask for medical assistance. Officer Benjamin stated over the police radio when he requested medical assistance that the witnesses said Rheault was "out and about" and did "not appear injured." (Video One at frame # 4195-4620). Additionally, at least one witness relayed to Officer Helmick at the scene that Rheault stated he was fine. Rheault can not establish either the objective or subjective prongs of his claim.

**V.       Failure to Intervene**

Rheault contends he is entitled to relief under 42 U.S.C. § 1983 because Officer Helmick failed to intervene and ensure that Rheault received needed medical assistance when Officer Cruze was interrogating Rheault. "A law enforcement officer who knows another officer is using excessive force has a duty to intervene." Livers v. Schenck, 700 F.3d 340, 360 (8th Cir. 2012). The Eighth Circuit has "not recognized a duty to intervene to prevent other [types of] constitutional violations," but other circuits have found such a duty. Id. (citations omitted). Assuming Officer Helmick has a constitutional duty to intervene in circumstances other than the excessive force context, Rheault is not entitled to relief because Officer Helmick did not know that Rheault needed medical assistance. Officer Cruze told Officer Helmick that Rheault said he was fine. Even if Officer Cruze was lying, Officer Helmick had no reason to believe, other than the fact that Rheault was in a car accident in which his air bag deployed, that Rheault was in

need of medical assistance.  Not everyone who is in a car accident suffers injury.  Rheault did

not ask for medical assistance, and at least one witness at the scene relayed to Officer Helmick

that Rheault said he was fine.

## VI.    Conspiracy

Rheault contends that he is entitled to relief under 42 U.S.C. § 1983 because the

defendants conspired to interfere with Rheault's civil rights.  In support of his claim Rheault

states in his response to defendants' motion for summary judgment that Officers Cruze and

Helmick should have recognized that he failed the field sobriety tests because of his head injury

and should not have jumped to the conclusion that he was intoxicated; the officers should have

obtained video footage from Hornbacher's grocery store where Rheault took some of the field

sobriety tests; Officer Helmick's accident report made the car accident seem less severe because

he wrote that Rheault hit Officer Benjamin's squad vehicle "square" and the air bag did not

deploy; Officer Cruze's arrest report states Rheault was not in a car accident and Officer Cruze

did not answer the question as to whether Rheault received medical care, but she notes at the

bottom of the arrest report a reference to the field notes and crash report; the Fargo Police

Department did not keep records detailing when the breathalyzer units used at the scene were

last calibrated and they did not have information regarding when the units last worked; Officers

Cruze and Helmick did not ensure that Rheault received medical attention, and Officer Helmick

and the Fargo Police Department did not obtain the video footage from Officer Benjamin's

squad car.  (Plaintiff's Response, Doc. #47, pp. 26-27).  Rheault concludes that "[t]he Officers

had plenty of time to act together . . . in making this look like an Accident Caused by a DUI."

Id. at 27.

To prove a conspiracy Rheault must show that (1) a defendant conspired with others to deprive him of constitutional rights, (2) at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy, and (3) the overt act injured the plaintiff. White v. McKinley, 519 F.3d 806, 814 (8th Cir.2008). Rheault has not met his burden because there is no evidence of any agreement to deprive Rheault of his constitutional rights. The accident report and the arrest report contained some errors, but nothing in the record suggests that the errors were intentional or part of any conspiracy to deprive Rheault of his constitutional rights. The fact that the defendants do not keep calibration records or other information related to the breathalyzer units does not evidence any conspiracy related to Rheault. There is no evidence that the failure to procure video footage from Officer Benjamin's squad car and Hornbacher's grocery store, assuming it existed, was part of a conspiracy. Finally, as noted above, there was probable cause for the officers to arrest Rheault for driving under the influence, and Rheault can not establish that the officers were deliberately indifferent to his serious medical needs.

## VII. Intentional Infliction of Emotional Distress

Rheault contends that he suffered severe emotional distress because the defendants failed to provide medical assistance and because of public comments made by Officer Helmick regarding the accident. (Plaintiff's Response, Doc. #47, pp. 15, 27-29). In a newspaper article Officer Helmick was quoted as saying, "It's bad enough with the visibility and people who aren't drunk, and then we get somebody like that, and that just makes things worse." (Plaintiff's Exhibit, News Article, Doc. #47-9, p. 3). In a television interview Rheault contends Officer Helmick was smiling and "almost joking" when Helmick said, "[Y]ou rarely get a call like that so everybody wants to come out and help." (Plaintiff's Response, Doc. #47, p. 15; Video shown on WDAY, http://www.wday.com/event/article/id/29214). Additionally, members of the public

commented on the newspaper article, saying hurtful things about Rheault, and a radio personality allegedly said negative things about Rheault on the radio after hearing Officer Helmick's comments.  (Plaintiff's Response, Doc. #47,  pp. 15, 27-28; Plaintiff's Exhibit, Comments on News Article, Doc. #47-10).

A claim of intentional infliction of emotional distress under North Dakota law requires proof of "(1) extreme and outrageous conduct that is (2) intentional or reckless and that causes (3) severe emotional distress."  <u>Muchow v. Lindblad</u>, 435 N.W.2d 918, 922-24 (D.N.D. 1989). "Extreme and outrageous" conduct is narrowly limited to outrageous conduct that exceeds "all possible bounds of decency."  <u>Id.</u> at 924.  Liability for intentional infliction of emotional distress "'clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'"  <u>Id.</u> (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

The defendants' failure to provide medical assistance when Rheault did not request it and when the defendants did not realize he was injured is not extreme and outrageous conduct. Additionally, Officer Helmick's comments were not extreme and outrageous given the existence of probable cause to support Rheault's arrest for driving under the influence.  Finally, the defendants have no control over comments by others regarding news stories or the radio personality's broadcast regarding the accident, and those individuals are not defendants in this action.  Rheault has failed to state a claim for intentional infliction of emotional distress that would entitle him to relief.

## VIII.   Negligent Hiring, Training, Supervising and Disciplining

Rheault alleges in his complaint that Officers Cruze and Helmick did not responsibly perform their duties as police officers, and the City of Fargo and the Fargo Police Department did not adequately investigate Rheault's complaints about the officers.  (Complaint, Doc. #7, p.

27). Rheault contends in his response to the defendants' motion for summary judgement that Sergeant Mike Mitchell agreed to change the accident report to correctly indicate that Rheault's air bag deployed, but Sergeant Mitchell did not see the officers' failure to provide Rheault with medical treatment as misconduct. (Plaintiff's Response, Doc. #47, p. 29). Rheault also states that he was never advised how to file a complaint with the police department, and he notes that Officers Helmick and Cruze were not disciplined for their actions. Id.

If Rheault's claims are brought pursuant to § 1983, the Eighth Circuit has consistently recognized the general rule that, "in order for municipal liability to attach, individual liability must first be found on an underlying substantive claim." McCoy v. City of Monticello, 411 F.3d 920, 922-23 (8th Cir. 2005) (citing McVay v. Sisters of Mercy Health Sys., 399 F.3d 904, 909 (8th Cir.2005) ("Since we have found that [the officer's] actions were not unconstitutional, [plaintiff] cannot make a prima facie case against the City under section 1983."); Turpin v. County of Rock, 262 F.3d 779, 784 (8th Cir.2001) (because district court properly granted officers summary judgment on qualified immunity grounds, the county was also entitled to summary judgment); Veneklase v. City of Fargo, 248 F.3d 738, 748 (8th Cir.2001) (en banc) ("where arresting police officers are absolved of liability to arrestees, the City ordinarily is not liable"); Thomas v. Dickel, 213 F.3d 1023, 1026 (8th Cir.2000) ("Because we have found that the officers' stop of the plaintiffs' car did not violate their fourth amendment [ ] rights, it follows that the plaintiffs' claim against the city (inadequate training and municipal custom) must likewise fail."); Eagle v. Morgan, 88 F.3d 620, 628 (8th Cir.1996) (because the officers' conduct did not violate plaintiff's constitutional right, the claims against the city fail); Abbott v. City of Crocker, 30 F.3d 994, 998 (8th Cir.1994) (city cannot be found liable on either a failure-to-train theory or a municipal custom/policy theory unless a defendant police officer is found liable on

an underlying substantive claim)).  Officers Helmick and Cruze are not individually liable for Rheault's underlying claims.  Rheault cannot sustain a claim against the City of Fargo and the Fargo Police Department under § 1983.

Similarly, Rheault has failed to state claims under North Dakota law.  Officers Helmick and Cruze are not liable for the alleged violations of Rheault's civil rights.  Even if they were liable, there is no evidence that the officers' conduct was foreseeable or that the Fargo Police Department or the City of Fargo knew or should have known that the officers would violate Rheault's civil rights.  See Richard v. Washburn Public Schools, 2011 ND 240, ¶ 7, 809 N.W.2d 288, 292 (negligent hiring claimed dismissed by the district court finding the wrongdoer's conduct was not foreseeable because the plaintiff failed to produce evidence that the  employer knew or should have known the wrongdoer would injure the plaintiff).  There is no evidence that the City of Fargo or the Fargo Police Department negligently trained the officers and there is no evidence that they failed to "exercise ordinary care in supervising the employment relationship" to prevent "foreseeable misconduct" of the officers.  Id. at ¶ 24, 297.

## Conclusion

Defendants are entitled to judgment as a matter of law.  Rheault has either failed to state a claim upon which relief can be granted or the defendants are entitled to qualified immunity.  It is **RECOMMENDED** that the defendants' motion for summary judgment be **GRANTED**, defendants' motion for a hearing be **DENIED**, and the plaintiff's complaint be **DISMISSED** with prejudice.

Dated this 5th day of June, 2013.

 /s/ *Karen K. Klein*　　　　　　
Karen K. Klein
United States Magistrate Judge

**NOTICE OF RIGHT TO OBJECT**

Pursuant to Rule 72(a) and (b), Federal Rules of Civil Procedure, and District of North Dakota Local Court Civil Rule 72.1(D)(2) and (3), any party may object to this Report and Recommendation by filing with the Clerk of Court no later than **June 19, 2013**, a pleading specifically identifying those portions of the Report and Recommendation to which objection is made and the basis of any objection. Failure to object or to comply with this procedure may forfeit the right to seek review in the Court of Appeals.